The STATE of Ohio, Appellee,

v.

MILLER, Appellant.

[Cite as *State v. Miller* (1995), 105 Ohio App.3d 679.]

Court of Appeals of Ohio,
Fourth District, Washington County.

No. 95CA8.

Decided Aug. 11, 1995.

*Alison L. Cauthorn,* Washington County Assistant Prosecuting Attorney, for appellee.

*Paul G. Bertram III,* for appellant.

KLINE, Judge.

Defendant-appellant, Brian L. Miller, was charged with two separate counts of domestic violence, each count alleging appellant's previous convictions of domestic violence. Appellant filed a written motion to sever counts one and two of the indictment which the trial court denied. The motion included a memorandum in support; however, appellant did not request a hearing on this motion.

The case proceeded to a jury trial. At the close of the state's case and at the close of appellant's case, appellant made Crim.R. 29 motions for acquittal. The trial court denied the motions and appellant was found guilty of both counts of domestic violence, each a felony of the fourth degree, in violation of R.C. 2919.25. Appellant filed a motion for a new trial asserting the same grounds argued within his Crim.R. 29 motions. The trial court denied appellant's motion for new trial without a hearing. Appellant was then sentenced to imprisonment of a definite period of one and one-half years on each count, to run consecutively. Appellant appeals his conviction and asserts the following assignments of error:

"Assignment of Error Number One

"The trial court committed prejudicial error by denying the defendant/appellant's Criminal Rule 29 motion for acquittal[.]"

"Assignment of Error Number Two

"The trial court committed prejudicial error by denying the defendant/appellant's motion for new trial[.]"

"Assignment of Error Number Three

"The trial court committed prejudicial error by denying the defendant/appellant's motion to sever count one and two of the indictment[.]"

"Assignment of Error Number Four

"The verdict finding the defendant/appellant guilty of domestic violence was erroneous because the verdict was against the manifest weight of the evidence[.]"

In June 1991, appellant and Jonni Jill Chutes were living together in Marietta, Ohio. During this time, appellant was married to another woman although he was having a relationship with Chutes. On July 8, 1991, appellant was indicted for acts of domestic violence against Chutes, as well as a previous domestic violence conviction involving appellant's wife. Appellant entered a plea of not guilty to this fourth degree felony and the matter was set for trial.

Appellant claims that Chutes told him that the case was to be dropped, so he left the area for Chattanooga, Tennessee and did not appear for trial. The case was not terminated and on September 10, 1991, appellant was indicted for breach of recognizance because he failed to appear at trial.

Chutes later joined appellant in Tennessee where they then proceeded to the state of Florida with two other people. While in Florida, both appellant and Chutes maintained, they did not live together. Chutes claims that she stayed in various places including the homes of girlfriends that she met while in Florida. Appellant testified that he eventually stayed with a preacher that he met.

In November 1991, appellant and Chutes returned to Ohio. Appellant was subsequently arrested for traffic violations and then detained for his previous charges. Pursuant to a plea bargain, on February 11, 1992, appellant entered a plea of guilty to the charge of domestic violence, and the breach of recognizance charge was dismissed. On August 21, 1992, after approximately five months in prison, appellant returned to Marietta, Ohio.

On March 9, 1993, appellant was indicted on two counts of domestic violence alleging separate incidents of physical abuse against Chutes in September and November 1992. Count one alleged that on or about September 9, 1992, appellant carried Chutes out of Judd's Bar in Marietta, Ohio and proceeded to kick Chutes while she was on the ground. Count two of the indictment alleged that on or about November 9, 1992, appellant forcibly removed Chutes from a vehicle parked at the A & K Market in Washington County, Ohio and hit her on the head and shoulder several times and then kicked her.

Much of the testimony at trial focused upon the living arrangements of appellant and Chutes. Because he had no place to live upon his release from

prison, appellant stayed at Martin Patterson's [1] residence in Whipple, Ohio. The record reflects that in addition to the Patterson residence, appellant spent time at the homes of Terry Hupp, Bill Neader, and Steve McCray. The record does not indicate the amount of time spent away from Patterson's residence or the dates that appellant stayed at the other places.

Following his release from prison, appellant also spent time with Chutes at her Short Street address. Appellant testified that on the night of the second alleged incident of abuse, he told Marietta Police Officer, Leonard Ritchie, that he was leaving Judd's Bar and did not want Chutes returning to her Short Street residence because he was staying there and did not want any arguments. Chutes had lived at Short Street prior to appellant's release from prison with only her name on the lease.

Chutes also lived on and off at Patterson's home as well as her own apartment before and after appellant was released from prison. The record reflects that Chutes had an ongoing arrangement with Patterson to store her furniture at his home. In September or October 1992, Chutes was evicted from her apartment on Short Street. Following her eviction, Chutes moved her furniture back into Patterson's home. She testified that she stayed at the Patterson house and also stayed at her parent's home.

Patterson testified that both Chutes and appellant lived at his residence on and off, but Patterson could not supply specific times or dates regarding the regularity and/or the duration of the intervals that appellant and Chutes spent together. Both Chutes and appellant admitted to sharing a room and having sexual relations when they did stay at Patterson's house. Both, however, testified that their relationship was purely sexual and at no time did they share any living expenses. Chutes claimed that the only monetary arrangement between herself and appellant was that she acted as payee for appellant's Social Security disability benefits for three periods of time. Both claimed that they have not lived together since June 1991.

The record indicates that neither appellant nor Chutes owned or rented any permanent residence after Chutes was evicted from her apartment. Witnesses testifying to the living arrangements between appellant and Chutes all acknowledged that Chutes and appellant stayed together at the Patterson house and at other locations. However, all refused to label the arrangement as "living together." Also living at the Patterson residence at some point was appellant's brother, Keith Miller. Testimony shows that other women stayed at the Patter-

---

1. Martin Patterson is a previous boyfriend of appellant's mother for over nineteen years and the father of appellant's two half-brothers.

son house during this period of time with appellant, specifically a Susan Schweitzer.

Chutes initially refused to answer questions at trial regarding her living arrangements. Eventually she stated that from the months of August 1992 through November 1992, she and appellant slept together off and on, but were separated and did not live consistently together during this time. Chutes testified that after November 21, 1992, she moved into her parents' house.

When questioned about the incidents of physical abuse alleged in September and November 1992, Chutes answered that she would exercise her right to remain silent pursuant to the Fifth Amendment of the United States Constitution. The trial court did not demand that Chutes testify, and the state then discontinued questioning Chutes. The responding police officer in the alleged September 1992 act of domestic violence, testified that Chutes said that if charges were brought against appellant, she would not show up or would appear in court and deny that the incident ever took place.

## I

In appellant's first assignment of error, he asserts that the trial court erred in denying his motions for acquittal pursuant to Crim.R. 29. Appellant contends that the state failed to prove beyond a reasonable doubt that Chutes was a family or household member. Specifically, appellant argues that the state failed to establish that appellant and Chutes lived together or cohabited in September or November 1992, or that they lived together in the year previous to the charges. Accordingly, appellant requested that counts one and two should have been reduced to assault, misdemeanors of the first degree, as there was no evidence that Chutes was a family or household member. Crim.R. 29(A) states:

"(A) Motion for judgment of acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."

When reviewing the trial court's denial of appellant's Crim.R. 29(A) motions for acquittal, we must construe the evidence in a light most favorable to the state and determine whether reasonable minds could reach different conclusions concerning whether the evidence proves every material element of the crime beyond a reasonable doubt. *State v. Evans* (1992), 63 Ohio St.3d 231, 248, 586 N.E.2d 1042, 1056; *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus.

Appellant was charged with two counts of domestic violence in violation of R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause harm or attempt to cause physical harm to a family or household member." Appellant argues that there is insufficient evidence to show that Chutes was a family or household member. "Family or household member" is defined in R.C. 2919.25(E)(1)(A) as "a spouse, a person living as a spouse, or a former spouse of the offender." R.C. 2919.25(E)(2) further defines "person living as a spouse" as a "person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, who otherwise has cohabited with the offender within one year prior to the date of the alleged commission of the act in question * * *."

This court initially notes that the term "cohabitation" lacks clear definition within Ohio case law. The majority of cases consider cohabitation in terms of domestic relations, specifically divorce proceedings. Few courts have addressed the problem of interpreting the General Assembly's meaning of "cohabiting" pursuant to R.C. 2919.25.

The court in *State v. Hadinger* (1991), 61 Ohio App.3d 820, 573 N.E.2d 1191, discusses cohabitation in the context of the domestic violence statute, R.C. 2919.25. Recognizing the absence of case law involving the term "cohabit" as applicable to R.C. 2919.25, the court in *Hadinger* considered various standards set forth in cases defining cohabitation in reference to other domestic relation issues.

The court in *Sindel v. Sindel* (App.1975), 7 O.O.3d 223, 226, defines "cohabitation" in regard to alimony conditions of a divorce:

"The ordinary meaning of cohabitation is, of course, the act of living together. What constitutes living together is a question of fact in each particular case. * * * Ordinarily, isolated acts of sexual intercourse * * * unaccompanied by other aspects of living together, would not constitute cohabitation. Conversely, cohabitation can be based entirely on acts of living together without sexual relations."

In *Taylor v. Taylor* (1983), 11 Ohio App.3d 279, 11 OBR 459, 465 N.E.2d 476, the court interpreted the term "cohabitation" in the context of a divorce decree whereupon the event of cohabitation would alter support obligations. The court in *Taylor* held that "[s]exual intercourse, in short, is not the *sine qua non* of the 'cohabitation' intended by the instant decree * * *. It may be a persuasive indicium of cohabitation, but it is not everything." *Id.* at 280–281, 11 OBR at 461, 465 N.E.2d at 478.

In *Fuller v. Fuller* (1983), 10 Ohio App.3d 253, 10 OBR 366, 461 N.E.2d 1348, the court examined cohabitation in a case where a decree of dissolution provided

that alimony would terminate upon cohabitation. The court followed the *Sindel* decision and stated that "the ordinary meaning of cohabitation [is defined] as the acts of a man and a woman living together, noting that isolated acts of sexual intercourse, unaccompanied by other aspects of living together, would not constitute cohabitation, but that, on the other hand, cohabitation can be based entirely upon acts of living together without sexual relations. Cohabitation requires some regularity of functioning as would a husband and wife, either sexually or otherwise." *Id.* at 253–254, 10 OBR at 367, 461 N.E.2d at 1349, citing *Sindel, supra;* see, also, *Lester v. Lester* (May 14, 1981), Franklin App. No. 81AP–84, unreported, 1981 WL 3186.

In *State v. VanHoose* (Sep. 27, 1993), Clark App. No. 3031, unreported, 1993 WL 386314, the court set forth the following definition of cohabitation in regard to the domestic violence statute, R.C. 2919.25:

"In summary, various Ohio appellate courts have held that to cohabit refers to a man and a woman living together in the same household and behaving as would a husband and wife. The courts are in accord that there need not be an actual assertion of marriage, and that cohabitation can be based entirely on acts of living together without sexual relations."

The above-stated case law provides this court with a basic standard for the term cohabitation with the understanding that each case will be decided by its particular set of facts. In the case *sub judice,* the trial court heard testimony from several witnesses before ruling on the Crim.R. 29 motions for acquittal. Evidence presented at trial [2] established that (1) upon his release from prison, appellant returned to Marietta, Ohio and stayed at the Patterson residence; (2) Chutes stayed at the Patterson residence before and after appellant's release from prison; (3) appellant and Chutes shared a bedroom and had sexual relations at the Patterson residence; (4) Chutes stored her furniture at the Patterson residence; (5) Chutes acted as the payee of appellant's social security disability benefits; (6) appellant and Chutes stayed and slept together at her residence on Short Street; and, (7) appellant and Chutes travelled together in Tennessee and Florida and then returned to Ohio together previous to his imprisonment.

This court finds that after viewing the evidence presented to the jury in a light favorable to the prosecution, reasonable minds could reach different conclusions as to whether each material element of domestic violence had been proved beyond a reasonable doubt. Accordingly, the trial court was justified in overrul-

---

2. This court acknowledges that appellant moved for acquittal pursuant to Crim.R. 29(A) at the close of the state's case and again at the close of the appellant's case. As the majority of the evidence presented to the jury regarding the living arrangements between appellant and Chutes was procured in the state's case, we address the motions for acquittal jointly.

ing appellant's motions for acquittal pursuant to Crim.R. 29(A) and appellant's first assignment of error is overruled.

## II

We will now address appellant's fourth assignment of error as it also centers upon the element of "family or household member" within the domestic violence statute. Appellant asserts that the jury's verdicts finding appellant guilty of domestic violence were against the manifest weight of the evidence. Appellant argues that the jury could not have rationally found him guilty beyond a reasonable doubt because the state failed to prove that Chutes was a family or household member.

A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt. *State v. Johnson* (1991), 58 Ohio St.3d 40, 41, 567 N.E.2d 266, 267; *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph two of the syllabus; *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, syllabus. In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Otten* (1986), 33 Ohio App.3d 339, 515 N.E.2d 1009; *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717.

In the case *sub judice*, the jury, as the trier of fact, was presented testimony from several witnesses regarding the living arrangements of appellant and Chutes. In the jury instructions, the jury was advised on the issue of credibility of witnesses:

"You are the sole judges of the facts, the credibility of witnesses and the weight of the evidence. To weigh evidence, you must consider the credibility of witnesses. You will apply the tests of truthfulness that you apply in your daily lives.

" * * *

"You are not required to believe the testimony of any witness simply because he or she was under oath. You may believe or disbelieve all or any part of the testimony of any witness. It is your province to determine what testimony is worthy of and what testimony is not worthy of belief."

It is well-established Ohio law that the credibility of witnesses' testimony is an issue for the jury or trier of fact. *State v. Tyler* (1990), 50 Ohio St.3d 24, 553

N.E.2d 576; *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. In this case, the jury weighed the credibility of the witnesses and determined that the element of domestic violence which requires that the harm or threat of harm be incurred by a family or household member was met. Specifically, the jury found beyond a reasonable doubt that Chutes was considered a family or household member.

This court finds that substantial evidence exists upon which the jury could find that Chutes was a family or household member. We have reviewed the entire record, weighed the evidence and all reasonable inferences, and considered the credibility of the various witnesses. There are definitely conflicts in the evidence as to whether the appellant and Chutes were living together. However, we do not find that the jury in resolving these conflicts clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed. Accordingly, the verdicts are not against the manifest weight of the evidence and appellant's fourth assignment of error is overruled.

## III

In appellant's second assignment of error, he argues that the trial court should have granted his motion for a new trial. Appellant claims that the verdicts on both counts were not sustained by the evidence. Instead, appellant contends that the evidence showed that he should have been found guilty of the lesser included offense of assault, a first degree misdemeanor. Again, appellant bases his argument upon the assertion that the state did not prove its case beyond a reasonable doubt with regard to the element of "family or household member" within the domestic violence statute, R.C. 2919.25.

Appellant moved for a new trial pursuant to R.C. 2945.79,[3] which provides for the granting of a new trial on the application of the defendant for causes materially affecting his substantial rights. R.C. 2945.79(D) specifically allows for a new trial upon a showing that "the verdict is not sustained by sufficient evidence or is contrary to law; but if the evidence shows the defendant is not guilty of the degree of crime for which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict or finding accordingly, without granting or ordering a new trial, and pass sentence on such verdict or finding as modified, provided that this power extends to any court to which the cause may be taken on appeal[.]"

---

3. The Ohio Supreme Court in *State v. Reed* (1981), 65 Ohio St.2d 117, 123, 19 O.O.3d 311, 314, 418 N.E.2d 1359, 1364, fn. 1, notes that Crim.R. 33(A)(4) supersedes R.C. 2945.79(D). However, the wording of Crim.R. 33(A)(4) and R.C. 2945.79(D) is virtually identical.

■ Rulings on motions for new trials are within the sound discretion of the trial court, and we may not disturb these rulings on appeal absent a clear showing that the trial court abused its discretion. *State v. Taylor* (1991), 73 Ohio App.3d 827, 833, 598 N.E.2d 818, 821; *Toledo v. Stuart* (1983), 11 Ohio App.3d 292, 11 OBR 557, 465 N.E.2d 474; *State v. Shepard* (1983), 13 Ohio App.3d 117, 13 OBR 135, 468 N.E.2d 380. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable. *State v. Moreland* (1990), 50 Ohio St.3d 58, 552 N.E.2d 894; *State v. Adams* (1980), 62 Ohio St.2d 151, 16 O.O.3d 169, 404 N.E.2d 144.

In the case *sub judice,* as discussed *supra,* we have already found that sufficient, substantial evidence exists for the jury to find that the element of "household or family member" was proven beyond a reasonable doubt. Therefore, we find that the trial court did not abuse its discretion in denying appellant's motion for a new trial. Accordingly, appellant's second assignment of error is overruled.

## IV

■ In appellant's third assignment of error, he contends that the trial court erred in denying his motion to sever counts one and two of the indictment. In count one of the indictment, appellant was charged with domestic violence against Chutes on September 9, 1992. The indictment further alleged that appellant was previously convicted of domestic violence against Chutes on March 3, 1992, as well as a previous conviction of domestic violence from Marietta Municipal Court. In count two of the indictment, appellant was charged with domestic violence against Chutes on November 9, 1992. This indictment also alleged the same previous convictions.

Appellant argues that his rights were prejudiced by the fact that he was not tried separately on his two counts of domestic violence. Specifically, appellant alleges that he was denied a fair trial because the jury may have found him guilty based upon the fact that he acted in conformity with his past conduct, instead of the evidence presented at trial. Further, appellant claims that the trial court erred in not granting him an oral hearing to illustrate the prejudice of trying the counts together.

■ The law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged are of the same or similar character. *State v. Franklin* (1991), 62 Ohio St.3d 118, 122, 580 N.E.2d 1, 5; *State v. Lott* (1990), 51 Ohio St.3d 160, 163, 555 N.E.2d 293, 297; *State v. Torres* (1981), 66 Ohio St.2d 340, 343, 20 O.O.3d 313, 315, 421 N.E.2d 1288, 1290. An accused may move to

sever under Crim.R. 14 upon a showing of prejudice. *State v. Wiles* (1991), 59 Ohio St.3d 71, 76, 571 N.E.2d 97, 107; *Lott, supra.* The trial court retains discretion in determining whether to try the accused separately on the different counts of the indictment. *Torres, supra,* at syllabus; *Braxton v. Maxwell* (1965), 1 Ohio St.2d 134, 30 O.O.2d 486, 205 N.E.2d 397. For an appellate court to reverse a trial court's ruling denying severance, the defendant must demonstrate that the trial court abused its discretion. *Lott, supra.*

■ "A defendant * * * under Crim.R. 14 has the burden of affirmatively showing that his rights were prejudiced; he must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial, and he must demonstrate that the court abused its discretion in refusing to separate the charges for trial." *Torres, supra,* 66 Ohio St.2d 340, 20 O.O.3d 313, 421 N.E.2d 1288, at syllabus. See, also, *State v. Roberts* (1980), 62 Ohio St.2d 170, 16 O.O.3d 201, 405 N.E.2d 247.

■ A Crim.R. 14 motion for severance of counts due to prejudicial misjoinder is waived unless it is renewed at the close of the state's case or at the conclusion of all the evidence. *State v. Strobel* (1988), 51 Ohio App.3d 31, 554 N.E.2d 916, paragraph two of the syllabus; *State v. Owens* (1975), 51 Ohio App.2d 132, 5 O.O.3d 290, 366 N.E.2d 1367, paragraph two of the syllabus; *State v. Cisternino* (Oct. 27, 1994), Cuyahoga App. No. 66387, unreported, 1994 WL 590523; *State v. Yascone* (Dec. 17, 1987), Cuyahoga App. Nos. 48383 and 48384, unreported, 1987 WL 29675. See, also, *State v. Walker* (1990), 66 Ohio App.3d 518, 585 N.E.2d 848. In the case *sub judice,* appellant failed to renew his pretrial motion to sever the counts of the indictment at the close of the state's case or at the close of all the evidence. Therefore, this court concludes that appellant has waived his right to argue severance on appeal. *Owens* and *Cisternino, supra.*

■ Accordingly, the plain error standard of Crim.R. 52(B) governs this court's review of appellant's motion to sever. Crim.R. 52(B) allows this court to address plain errors or defects affecting substantial rights although they were not properly brought to the attention of the court. We note that notice of plain error pursuant to Crim.R. 52(B) is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus.

■ When severance of the counts due to prejudicial misjoinder is requested, the state can counter claims of prejudice by two methods. The first method utilizes the "other acts" test where the state argues that it could have introduced evidence of the separate count under the "other acts" portion of Evid.R. 404(B), if the counts were severed. *Lott, supra,* 51 Ohio St.3d at 163, 555

N.E.2d at 297. The second method applies the "joinder" test where the state is not required to meet the stricter "other acts" admissibility test, but instead is only required to show that evidence of each crime joined at trial is simple and direct. *Id.* See, also, *Roberts* and *Torres, supra.* "[W]hen simple and direct evidence exists, an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of these crimes as 'other acts' under Evid.R. 404(B)." *Lott, supra,* 51 Ohio St.3d at 163, 555 N.E.2d at 297, citing *Roberts* and *Torres* and *United States v. Catena* (C.A.3, 1974), 500 F.2d 1319, 1325–1326.

In the case *sub judice,* the trial court joined a September 1992 count of domestic violence and a November 1992 count of domestic violence. Both counts occurred within a two-month period and involved the same victim and the same crime. The testimony and evidence regarding the offenses were simple and direct and not rendered more complex or confusing by joining the two counts of domestic violence. Appellant has failed to demonstrate the level of prejudice necessary for a reversal due to misjoinder. Therefore, under the "joinder" test, we find that appellant was not prejudiced by the trial court's denying of the motion to sever.

Appellant further insists that error was committed by the trial court in not granting a hearing before denying the motion to sever. Consequently, appellant claims that he was unable to fully demonstrate the prejudice in having both counts tried together.

This court notes that appellant submitted a memorandum in support with his motion to sever. However, the record reflects that at no point in the proceedings below did appellant request a hearing on the motion. A trial court is not required to conduct an evidentiary hearing on a pretrial motion where no hearing is requested. *State v. Haddix* (1994), 92 Ohio App.3d 221, 223, 634 N.E.2d 690, 691; *State v. Feltner* (1993), 87 Ohio App.3d 279, 283, 622 N.E.2d 15, 16; *State v. McClure* (June 14, 1985), Highland App. No. CA–537, unreported, 1985 WL 11123. As the record shows that appellant never requested a hearing on his motion to sever, we conclude that the trial court did not err in failing to conduct such a hearing.

We find that the trial court's denial of appellant's motion to sever the counts of the indictment did not result in a manifest miscarriage of justice. Joinder of the counts was proper and therefore no plain error exists. Accordingly, appellant's third assignment of error is overruled.

For all the foregoing reasons, appellant's assignments of error are overruled and the trial court's judgment is affirmed.

*Judgment affirmed.*

PETER B. ABELE, P.J., and STEPHENSON, J., concur.