OPINION
Mark L. Rutledge appeals from a judgment of the Montgomery County Court of Common Pleas which convicted him of possession of crack cocaine and of tampering with evidence and sentenced him to eight years of incarceration.
The evidence presented at the trial established two different versions of the events in question. The state presented the following version of events through the testimonies of various Dayton police officers, a firearms and tool marks examiner, a fingerprint examiner identification detective, a parole officer, and a forensic chemist.
On October 6, 1999, the police department executed a search warrant on 3936 Lori Sue Avenue, Apartment B, in Dayton, Ohio. Prior to that date, the police department had been advised that drugs were being sold from that location and at least one officer had witnessed heavy foot traffic in and out of that location. No evidence was presented to support the conclusion that Rutledge owned or resided in the apartment.
At 9:52 p.m. that evening, the Special Weapons and Tactics team ("SWAT team") of the police department began walking toward the targeted apartment. As they approached, individuals outside of the apartment began yelling "get out of the house," while others honked car horns and whistled. As the SWAT team walked up to the apartment's front entrance, they saw a male in an orange jacket pull open the drapes in one of the apartment windows, look out, and then run away from the window. While playing a recorded police message and deploying distraction devices, the SWAT team opened the front door with a steel ram and spread throughout the apartment.
Officer Brian D. Johns, a member of the SWAT team, entered the apartment and moved toward the bedrooms. As he walked down a hallway, he realized that there were people inside a bathroom. He saw a man in an orange outfit, later identified as Rutledge, leaning over the toilet, taking money out of the front pouch of his jacket, and throwing it into the toilet. The toilet had been flushed and was backed up and nearly flooding. Johns estimated that fourteen or fifteen seconds had passed between the time he had seen Rutledge in the window and the time he had spotted him in the bathroom.
Two other individuals, a male and female, were also in the bathroom. The male, James Nathaniel Boyd, Jr., was lying flat in the bathtub with his head "away" from the toilet and his hands under his back. The female was sitting in the bathtub, "almost on top" of Boyd's head. Johns did not see the two people in the bathtub throwing anything in the toilet or moving their hands. The bathroom floor was wet and there was also money on the floor. The officers took custody of the three suspects and removed them from the bathroom. Suspecting the toilet to be clogged with contraband, an officer used the steel ram to knock the toilet off of its base. When the toilet was knocked off its base, a plastic baggie containing a large piece of crack cocaine fell out of the base of the toilet.[1] [Tr.p. 97] A "soggy" one dollar bill fell out of the toilet as well and apparently had been on top of the baggie containing the crack cocaine. Clear water from the toilet also flooded the floor.
Rutledge was arrested and searched. Officers found $100 in his left front pants pocket and $4,619 in "smaller" denominations in the front pouch of his jacket. Officers also found $82 on the bathroom floor around the toilet. The searching officer asked Rutledge if he had a job and Rutledge did not reply. Rutledge did not have a weapon on his person.
In searching the apartment, officers also found six operable firearms, five of which contained live rounds, baggies of crack cocaine, marijuana, electronic scales, and a plate with a razor blade and crack cocaine residue on it. One of the weapons found was an operable semiautomatic "Colt trooper caliber S .357 magnum" handgun with six live rounds in it. The police discovered that such gun had been reported stolen from Richmond, Virginia. The handgun was dusted for fingerprints. A fingerprint examiner identification detective testified that, after comparing the prints on the gun to Rutledge's prints, he had concluded within a reasonable degree of scientific certainty that one of the fingerprints could have only been left by Rutledge's left ring finger.
A forensic chemist from the Miami Valley Regional Crime Laboratory testified that the bag that fell out of the toilet had, in fact, contained crack cocaine. He stated that the bag had contained three pieces, all of which had the same color and texture. He concluded that the pieces had been from a homogeneous mixture. The largest piece had weighed 47.68 grams and the three pieces together had weighed 48.48 grams.
One of the exhibits produced at trial indicated that on July 16, 1992, Rutledge had been convicted of felonious assault. For that conviction, he had been sentenced to five to fifteen years of incarceration. According to the testimony of his parole officer, Rutledge had been released on parole in May 1999.
The defense presented the testimonies of two witnesses. Thomas G. Rutledge, Jr. ("Thomas") is Rutledge's brother. He testified that Rutledge had received between $1,500 and $1,700 for his birthday on October 4th and that he had recently given Rutledge $2,500 to purchase a car.
Boyd, the male in the bathtub, testified as follows. Ten to fifteen minutes before the police arrived, Rutledge came to the apartment. During that time, people had been coming to the apartment and buying crack cocaine from the plate with the razor blade and crack cocaine on it. When the police knocked at the apartment door, Boyd ran to the restroom. Thinking that he had "marked" money, he dropped it in the toilet and flushed it, but the money did not go down the toilet. Boyd then fell over into the bathtub. The female and Rutledge came into the bathroom right behind Boyd. The female fell on top of Boyd in the bathtub and when Boyd looked back, he saw Rutledge either falling down or getting up, like he had slipped. On direct examination, Boyd stated that Rutledge had ended up in the bathtub with him and the female. On cross examination, Boyd stated that the police officers had "put" Rutledge in the bathtub. According to Boyd, Rutledge never possessed a weapon or crack cocaine and he never threw money into the toilet. Boyd also stated that he had not known the crack cocaine was in the toilet when he had attempted to flush his money. When asked about some of the firearms in the apartment, Boyd stated that a person named "McD" had bought them.
On October 14, 1999, Rutledge was indicted for one count of possession of crack cocaine in an amount exceeding twenty five grams but not exceeding one hundred grams in violation of R.C. 2925.11(A) and one count of tampering with evidence in violation of R.C. 2921.12(A)(1). On December 14, 1999, Rutledge was also indicted on one count of having a weapon while under disability. Rutledge filed a motion to sever the counts of possessing drugs and tampering with evidence from the count of having a weapon while under disability. The trial court denied his motion for severance on July 5, 2000.
A jury trial was held on July 17-19, 2000. The jury convicted Rutledge of the counts of possession of crack cocaine and of tampering with evidence. Rutledge was found not guilty of having a weapon while under disability. On August 8, 2000, Rutledge was sentenced to eight years of incarceration for the count of possessing crack cocaine and to one year for tampering with the evidence. The sentences were ordered to be served concurrently.
Rutledge now appeals his conviction and raises five assignments of error.
 I. APPELLANT'S CONVICTIONS ARE NOT SUPPORTED BY THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
Rutledge argues that neither the weight of the evidence nor the sufficiency of the evidence at trial supported his convictions. He claims that the jury lost its way in finding him guilty of the two counts.
"The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, paragraph two of the syllabus. To determine whether a conviction is against the manifest weight of the evidence:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Id. at 387, 678 N.E.2d at 547, quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720-721.
To determine whether the evidence before a trial court was sufficient to sustain a conviction, we must examine the evidence to evaluate whether such evidence, if believed, would convince the average mind beyond a reasonable doubt of the defendant's guilt. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. While making this examination, we must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. "`Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency.'" (Emphasis sic.) State v. Pryce (June 28, 2000), Summit App. No. 19888, unreported, quoting State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported.
Rutledge was charged with possession of crack cocaine in violation of R.C. 2925.11(A), which provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance." "Possess" and "possession" are statutorily defined as "having control over a thing or substance, but [possession] may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession can be actual or constructive. State v. Mann (1993), 93 Ohio App.3d 301,308, 638 N.E.2d 585, 589, dismissed (1994), 70 Ohio St.3d 1412,637 N.E.2d 9. While the state argued at trial that Rutledge had had constructive possession of the crack cocaine in the toilet, we believe the evidence also lent itself to the theory that Rutledge had recently had actual possession of the crack cocaine. Because the state did not argue actual possession and the jury was only instructed on constructive possession, we will examine the evidence only in light of the theory of constructive possession.
A person has constructive possession of a thing when he is able to exercise dominion or control over it. Id., citing State v. Wolery (1976), 46 Ohio St.2d 316, 332, 348 N.E.2d 351, 362. Readily usable drugs that are found in very close proximity to a defendant may constitute circumstantial evidence and support a conclusion that the defendant had constructive possession of the drugs. State v. Barr (1993), 86 Ohio App.3d 227, 235, 620 N.E.2d 242, 248, citing State v. Pruitt (1984), 18 Ohio App.3d 50, 58, 480 N.E.2d 499, 508; State v. Brown (July 14, 2000), Montgomery App. No. 17891, unreported.
The evidence in the record reveals that Rutledge was seen looking out of the apartment window as the SWAT team approached and that fourteen or fifteen seconds later, he was found in front of the toilet. The bathroom was about four or five steps from the bedroom window where Rutledge was seen. Johns saw Rutledge taking money from his front pouch and throwing it into the toilet. The toilet had been flushed and was backing up and almost flooding. Although two other individuals were also in the bathroom, one, Boyd, was lying down with his head "away" from the toilet and his hands under his back. The other individual was sitting "almost on top" of Boyd's head. No one other than Rutledge was seen moving his hands or throwing anything into the toilet.
Police officers testified that the toilet water was clear and that there was no evidence of any human waste, even after the toilet was knocked off of its base. One officer, Mark Auricchio, testified that he was "sure that [the crack cocaine] hadn't been lodged in [the toilet] for any long period of time" because there were three people in the apartment and thus the bathroom would have been "used quite frequently." [Tr.p. 115] He stated that his conclusion was also supported by the following facts: it was "a substantial amount of crack cocaine," there were people in the bathroom when the SWAT team found them, the toilet water was running and was not discolored as if someone had just used the toilet; and in his experience, he had previously encountered people trying to dispose of evidence in toilets. [Tr.p. 119] Another police officer, Bradley A. Barnett, also stated that due to the number of people inside the apartment, he believed the crack cocaine had been flushed at about the time of the SWAT team's entry. Barnett also testified that using the toilet to destroy evidence is a "very common practice" that he has seen many times during the executions of search warrants. [Tr.p. 307]
Although Thomas testified that Rutledge had received approximately $4,000 from his birthday and a loan, it is unclear why Rutledge would have been flushing such "innocent" money down the toilet, as witnessed by Johns. Further, although Boyd testified that Rutledge had not possessed or flushed the crack cocaine, Boyd's own testimony contained some inconsistencies, such as whether Rutledge had been in the bathtub before the SWAT team entered the bathroom or whether the police officers had put Rutledge in the bathtub. Boyd's testimony also included an admission of previous convictions for possession of crack cocaine, descriptions of the apartment as "a place for us to get high and sell drugs" and as the place they would go when they had drugs to sell, references to his own "drug usage," and his statement that he is "usually in drugs." [Tr.p. 367-368]
After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we cannot conclude that the jury clearly lost its way and created a manifest miscarriage of justice when it convicted Rutledge on the count of possession of drugs. Although his constructive possession of the drugs is supported by circumstantial evidence, the supreme court has explicitly stated that direct evidence and circumstantial evidence have the same probative value. Jenks, 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph one of the syllabus. Thus, we will not conclude that Rutledge's conviction for possessing drugs was against the manifest weight of the evidence. Rutledge was also charged with tampering with evidence in violation of R.C. 2921.12(A)(1), which provides "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any * * * thing, with the purpose to impair its value or availability as evidence in such proceeding or investigation[.]"
The state produced evidence that, as the SWAT team formed a line to enter the apartment, it began playing an audio tape via a bull horn that stated, "Dayton Police. Search warrant" and then named the address and asked the occupants to open the door. The tape repeated itself between twenty and thirty times. The tape could be heard at least 150 to 200 feet away from the apartment. Further, the SWAT team saw Rutledge look out the window at them as they approached the apartment. Thus, the jury did not lose its way in concluding that Rutledge knew that an official proceeding or investigation was in progress or was about to be instituted. Further, as we concluded supra, Rutledge's conviction for possessing the drugs found in the toilet was not against the manifest weight of the evidence. Thus, we cannot conclude that the jury lost its way in concluding that Rutledge had concealed the crack cocaine in the toilet to impair its availability as evidence.
Having concluded that the convictions were not against the manifest weight of the evidence, we perforce also conclude that the convictions were supported by sufficient evidence.
The first assignment of error is overruled.
 II. APPELLANT WAS DENIED A FAIR TRIAL BY THE TRIAL COURT'S DENIAL OF APPELLANT'S MOTION TO SEVER COUNTS.
Rutledge argues that the trial court's denial of his motion to sever the counts of possession of drugs and tampering with evidence from the count of having a weapon under disability unfairly prejudiced him.
A motion for severance of counts due to prejudicial misjoinder is waived unless it is renewed at the close of the state's case or at the conclusion of all the evidence. State v. Miller (1995),105 Ohio App.3d 679, 691, 664 N.E.2d 1309, 1317 (citation omitted). Rutledge did renew his motion for severance at the conclusion of all of the evidence. Thus, he properly preserved his right to raise this issue on appeal.
Crim.R. 8(A) permits joinder when the charged offenses "are of the same or similar character." It is well-established that the law favors joinder because the avoidance of multiple trials conserves time and expense and minimizes the potentially incongruous outcomes that can result from successive trials before different juries. State v. Schiebel (1990), 55 Ohio St.3d 71, 86-87, 564 N.E.2d 54, 71, certiorari denied (1991), 499 U.S. 961, 111 S.Ct. 1584-1585; State v. Torres (1981),66 Ohio St.2d 340, 343, 421 N.E.2d 1288, 1290.
Under Crim.R. 14, however, "[i]f it appears that a defendant * * * is prejudiced by a joinder of offenses * * *, the court shall order an election or separate trial of counts * * *." To affirmatively show that his rights have been prejudiced, the defendant "must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial, and he must demonstrate that the court abused its discretion in refusing to separate the charges for trial." State v. Lott (1990), 51 Ohio St.3d 160,163, 555 N.E.2d 293, 298, certiorari denied (1990), 498 U.S. 1017,111 S.Ct. 591; Torres, 66 Ohio St.2d 340, 421 N.E.2d 1288, at syllabus.
Rutledge argues that his rights were prejudiced by the joinder because the count of having a weapon while under disability informed the jury that he had a previous conviction and such information "poisoned the minds of the jurors concerning [his] character[.]"
The state can negate the defendant's claim of prejudice in two different ways. Under the first method, referred to as the "other acts" test, the state must demonstrate that the evidence to be introduced at the trial of one offense would also be admissible at the trial of the other severed offense under the "other acts" portion of Evid.R. 404(B). Lott, 51 Ohio St.3d at 163, 555 N.E.2d at 298; Miller,105 Ohio App.3d at 691, 664 N.E.2d at 1317; State v. Van Sickle (1993), 90 Ohio App.3d 301,305, 629 N.E.2d 39, 41-42. Under the second method, called the "joinder test," "the state is not required to meet the stricter `other acts' admissibility test, but is merely required to show that evidence of each crime joined at trial is simple and direct." Lott,51 Ohio St.3d at 163, 555 N.E.2d at 298. The purpose of the "joinder test" is to prevent the jury from confusing the offenses or from improperly cumulating the evidence of the various crimes. Van Sickle, 90 Ohio App.3d at 307,629 N.E.2d at 43, citing Lott, 51 Ohio St.3d at 163-164,555 N.E.2d at 298-299. The "joinder test" "focuses on whether the trier of fact is likely to consider evidence of one [offense] as corroborative of the other." State v. Wiles (1991), 59 Ohio St.3d 71, 77, 571 N.E.2d 97,108, certiorari denied (1992), 506 U.S. 832, 113 S.Ct. 99 (citation omitted).
The state argues that the trial court properly denied Rutledge's motion for severance because the evidence of each of the crimes was simple and direct. We agree. Regarding the crack cocaine, police officers testified that Rutledge was found in the bathroom in front of the toilet flushing money. When the officers knocked the toilet off of its base, crack cocaine was discovered inside of it. A forensic chemist testified that the substance in the toilet was, in fact, crack cocaine. Regarding the count of having a weapon while under disability, police officers testified that a Colt handgun with six live rounds was discovered on the kitchen table. The parties stipulated that an evidence technician had dusted the handgun for fingerprints and that another police officer had obtained Rutledge's fingerprints at the scene. A fingerprint examiner identification detective then testified that based upon his examination, he had concluded within a reasonable degree of scientific certainty that there was a fingerprint on the handgun that could have only been left by Rutledge's left ring finger.
Although some officers who had been assigned to recover evidence, process the scene, or inventory the scene testified about both the crack cocaine and the Colt hangun, their testimonies regarding each were direct and were simple to follow. Such testimonies would not have led the jurors to confuse the offenses or improperly cumulate the evidence of the various crimes.
More importantly, the jury apparently did not consider the evidence regarding the crack cocaine to be corroborative of the evidence regarding the handgun because Rutledge was acquitted of the count of having a weapon while under disability. See State v. Stephens (May 12, 2000), Montgomery App. No. 17851, unreported; State v. Chavis (July 27, 1992), Butler App. No. CA91-10-171, unreported. Thus, Rutledge's argument is not persuasive.
The second assignment of error is overruled.
 III. APPELLANT WAS DENIED A FAIR TRIAL BY THE TRIAL COURT'S DENIAL OF APPELLANT'S MOTION FOR A RELEVANT JURY INSTRUCTION.
Rutledge argues that the trial court erred in refusing to give his requested instruction to the jury. He contends that the requested instructions were warranted "because the factual circumstances in evidence were precisely `on point' and the language employed by the [t]rial [c]ourt was obtuse and misleading[.]"
We must determine whether the trial court abused its discretion in refusing to give Rutledge's requested instruction. State v. Wolons (1989), 44 Ohio St.3d 64, 68, 541 N.E.2d 443, 447. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." In re Jane Doe 1 (1991), 57 Ohio St.3d 135, 137, 566 N.E.2d 1181, 1184
(quotation omitted).
A criminal defendant is entitled to have the trial court give complete and accurate jury instructions on all the issues raised by the evidence. State v. Sneed (1992), 63 Ohio St.3d 3, 9, 584 N.E.2d 1160, 1166-1167, certiorari denied (1993), 507 U.S. 983, 113 S.Ct. 1577, citing State v. Williford (1990), 49 Ohio St.3d 247, 251, 551 N.E.2d 1279, 1283. The trial court commits prejudicial error if it refuses "to administer a requested charge which is pertinent to the case, states the law correctly, and is not covered by the general charge." Sneed,63 Ohio St.3d at 9, 584 N.E.2d at 1166, quoting State v. Scott (1986),26 Ohio St.3d 92, 101, 497 N.E.2d 55, 63, certiorari denied (1987),480 U.S. 923, 107 S.Ct. 1386. The trial court is not, however, required to give the defendant's requested jury instructions verbatim, but instead may use its own language to communicate the same legal principles. State v. Hicks (1989), 43 Ohio St.3d 72, 77, 538 N.E.2d 1030, 1037, certiorari denied (1990), 494 U.S. 1038, 110 S.Ct. 1502.
Rutledge requested the following instruction:
 Knowledge of illegal goods on one's property is sufficient to show constructive possession. Whether the defendant either owns, leases or occupies the premises, his mere presence in an apartment in which drugs and criminal tools are found is insufficient evidence of his possession of the contraband.
The trial court denied his request, finding that the first sentence was inapplicable to the case because there was no evidence that the apartment was Rutledge's property. The trial court also concluded that the entire proposed instruction was quoted from an Eighth Appellate District case which was not binding on the court. The trial court opted, instead, to use the language from Ohio Jury Instructions and one of our cases. In her instructions to the jury, the trial judge stated as follows:
 Possess means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found.
 Constructive possession is shown when an individual can exercise dominion or control over the object, whether or not it is in his immediate physical possession. [Tr.p. 449-450]
The trial court did not abuse its discretion in concluding that the first sentence of Rutledge's requested instruction was not applicable to the case. The state did not argue that Rutledge resided in or owned the apartment. Further, Rutledge's attorney questioned a number of the police officers about their inability to find any paper documents at the apartment which connected Rutledge to it. Thus, an instruction about illegal goods on one's own property was not pertinent to the case.
We also cannot conclude that the trial court abused its discretion when it used its own language instead of the language in the second sentence of Rutledge's requested instruction. His requested instruction essentially stated that, to prove that Rutledge possessed the drugs, the state needed to establish more than his mere presence in the apartment where the drugs were found. The first sentence of the instruction given by the judge told the jury that it could not infer that Rutledge had possessed the drugs merely because he had had access to the drugs while occupying the apartment. Thus, the court used its own language to communicate the same legal principle contained in the second sentence of Rutledge's requested instruction.
The third assignment of error is overruled.
 IV. APPELLANT WAS DENIED A FAIR TRIAL BECAUSE OF PROSECUTORIAL MISCONDUCT[.]
Rutledge argues that the prosecutor's misconduct denied him a fair trial. Specifically, he claims that the prosecutor improperly tried to imply that he had stolen the Colt handgun.
In considering claims of prosecutorial misconduct, we must examine whether the prosecutor's conduct at trial was improper and, if so, whether that conduct affected the defendant's substantial rights. Lott,51 Ohio St.3d at 165, 555 N.E.2d at 300. In analyzing the prosecutor's conduct, we must focus on the fairness of the trial, not the culpability of the prosecutor. State v. Apanovitch (1987), 33 Ohio St.3d 19, 24,514 N.E.2d 394, 400. Prosecutorial error exists if it is clear beyond a reasonable doubt that the jury would not have found the accused guilty absent the prosecutor's remarks. State v. Smith (1984), 14 Ohio St.3d 13,15, 470 N.E.2d 883, 886. The state is permitted wide latitude in commenting on and drawing inferences from the evidence. State v. Stephens (1970), 24 Ohio St.2d 76, 82, 263 N.E.2d 773, 777.
One of the police officers testified that, after the weapons were turned over to him, he contacted "records" to determine whether any of them had been stolen. He stated that he received information that the Colt handgun had been stolen from Richmond, Virginia.
In her rebuttal closing statement, the prosecutor stated as follows:
 With regard to the gun charge, I want to submit the following things to you: First of all, there was evidence that the gun, the Colt gun[,] was stolen. Now, why would anyone put any significance on that? Well, let's think. Our defendant has been convicted of a crime, convicted of a felony. He can't have guns. That is something that we would all agree they don't need to have. So how are you going to get a gun if you are in a business that you think-or you are in an area that you think you may need protection?
[RUTLEDGE'S ATTORNEY]: Objection.
THE COURT: Overruled.
 [PROSECUTOR:] You get a stolen gun. It can't be traced to you. There is no record and unless you get caught or someone can tie it to you, nobody knows. Now, with regard to the fingerprints, doesn't matter under the law whether that other person, [McD] or whoever he is, even if whether he existed or not, had that gun, brought it in or what. Because there is no evidence about his fingerprints and he's not here at trial. All we are concerned about is this defendant. And there is no evidence that the fingerprint fairy put his fingerprint on that gun. What we have is the defendant's fingerprint was on that gun. We don't know whether the defendant used the gun left-handed or not. Even though he was right-handed, that is what his brother said. I don't have to show it-show what the scenario was or how the fingerprint got on it.
 All I have to show is that this defendant's fingerprint was on a gun. He had no reason to have a gun and you are able to draw inference that if his fingerprint is on that gun, wherever it is, that this defendant either acquired or he used it, either he carried it, but he had that weapon. [Tr.p. 440-441]
The prosecutor did not specifically allege that Rutledge had stolen the gun. Further, although her remarks could have implied that Rutledge had stolen the gun, we believe they more strongly implied merely that to get a gun, Rutledge needed one that had been stolen because he could not get one by normal means. We believe such comment was within the state's latitude in commenting on and drawing inferences from the evidence. Even if such comment was improper, however, Rutledge's substantial rights were not affected by it because he was not convicted of the charge of having a weapon while under disability.
The fourth assignment of error is overruled.
V. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF LEGAL COUNSEL[.]
Rutledge argues that he was denied the effective assistance of legal counsel because his trial counsel failed to object to the state's elicitation of certain evidence and he failed to request a limiting jury instruction pursuant to Evid.R. 105.
"To obtain a reversal of a conviction on the basis of ineffective assistance of counsel, the defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." State v. Madrigal (2000), 87 Ohio St.3d 378, 388-389, 721 N.E.2d 52, 64, certiorari denied (2000), ___ U.S. ___, 121 S.Ct. 99, citing Strickland v. Washington (1984), 466 U.S. 668, 687-688, 104 S.Ct. 2052, 2064; accord State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraphs two and three of syllabus, certiorari denied (1990), 497 U.S. 1011,110 S.Ct. 3258. A defendant's failure to satisfy one prong of this test negates a court's need to consider the other prong of the test. Madrigal, 87 Ohio St.3d at 389, 721 N.E.2d at 64, citing Strickland,466 U.S. at 697, 104 S.Ct. at 2069.
"Prejudice," as required by the second prong of the test, has been defined as "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Bradley, at paragraph three of the syllabus. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v. Bays (1999), 87 Ohio St.3d 15, 27, 716 N.E.2d 1126, 1140, certiorari denied (2000), ___ U.S. ___, 120 S.Ct. 1727.
In reviewing a claim of ineffective assistance of counsel, we "`must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Mason (1998),82 Ohio St.3d 144, 157-158, 694 N.E.2d 932, 949, certiorari denied (1998), 525 U.S. 1057, 119 S.Ct. 624, citing Strickland,466 U.S. at 689, 104 S.Ct. at 2065. Thus, "we will not second-guess trial strategy decisions." Mason, 82 Ohio St.3d at 157, 694 N.E.2d at 949.
Rutledge argues that his trial counsel was ineffective because he failed to object to the state's elicitation of evidence that implied his guilt. On direct examination, the officer who searched Rutledge stated that after he had found a large sum of cash on Rutledge, he had asked Rutledge if he had a job, but Rutledge had not replied. We believe the attorney's failure to object to that information was likely a trial strategy decision, because his attorney knew, at the time the state elicited this information, that he planned to call Thomas and Boyd during the presentation of the defense's case. The testimonies of Thomas and Boyd offered legal explanations of why Rutledge had had such a large sum of money. Thus, the attorney likely decided not to draw the jury's attention to Rutledge's silence with an objection and planned, instead, to present evidence which would explain the origin of the money. We will not second-guess the attorney's strategic decision.
Rutledge also argues that his trial counsel was ineffective because he failed to object to the state's elicitation of evidence that numerous firearms aside from the Colt handgun had been found during the search of the apartment. He states that none of the additional weapons were relevant to the charges against him. He also claims that the state presented such evidence "in a deliberate effort * * * to cast [him] as a generally violent and `bad' person[.]"
The state presented evidence that the search warrant that was obtained was a "high risk nonconsensual entry search warrant." An officer testified that the warrant was high risk because the police department had obtained information of certain risk factors in the apartment, including the presence of guns, vicious guard dogs, and rear door barricades. The evidence of the additional weapons that were discovered during the search was relevant to the case because it demonstrated to the jury that at least one of the high risk factors had been present and that the use of the SWAT team, steel ram, and distraction devices had been necessary for the safety of those effectuating the search warrant. Further, we do not believe that there is a reasonable probability that, had Rutledge's attorney objected to this information, the result of the trial would have been different because the jury convicted Rutledge of charges that were unrelated to the weapons and did not convict him of the count of having a weapon while under disability.
Rutledge argues that his trial counsel was ineffective because he failed to object to evidence that the Colt handgun was stolen. Rutledge argues that his attorney should not have allowed the state "to cast [him] as a thief" because such character evidence is prohibited. As we stated, supra, the state did not specifically allege that Rutledge had stolen the handgun. Further, we do not believe that there is a reasonable probability that, had Rutledge's attorney objected to this evidence, the result of his trial would have been different because he was not convicted of having the Colt handgun while under disability.
Rutledge also argues that his trial counsel was ineffective because he failed to request a limiting instruction from the judge to inform the jury that it could only consider Rutledge's prior conviction as evidence relevant to the weapons charge and not as an indication of Rutledge's character. We do not believe that there is a reasonable probability that, had the jury been given the limiting instruction, the result of the trial would have been different. Rutledge implies that the jury convicted him because it believed he is a "bad" person. Had the jury truly convicted him solely because it believed he had poor character, it seems that the jury would have likely convicted him of all of the charges, including the count of having a weapon while under disability. The jury chose, however, not to convict him of the weapons count.
The fifth assignment of error is overruled.
The judgment of the trial court will be affirmed.
 ____________ WOLFF, P. J.
[1] At oral argument, Rutledge's attorney argued that the evidence revealed that the baggie of crack cocaine had been manually wedged into the toilet by someone sticking his arm into the toilet and that, because the defendant's arm had not been wet, he could not have placed it there. The evidence does not support such a definite conclusion, however, for two reasons. First, one officer stated that he did not recall Rutledge being wet; the officer did not state that Rutledge was not wet. Second, while describing the baggie's location, one of the officers testified that the baggie had been "wedged up into" the "little trap" that is "almost shaped like a J or U" in the toilet. [Tr.p. 97]The officer did not state that a person had manually wedged it there. The officer stated, instead, that it was possible that someone had jammed the baggie into the toilet because he had "encountered people with fists up in toilets" before. [Tr.p. 113] The officer estimated that the baggie had traveled between eight to twelve inches into the toilet. With that lengthy estimated distance and the fact that the baggie was found at the base of the toilet in the "little trap," we cannot agree that the evidence definitively demonstrated that someone had manually placed the baggie into the toilet.