OPINION
{¶ 1} Defendant-appellant, Julie A. Crosky, appeals from a judgment of conviction for two counts of child endangering entered by the Franklin County Court of Common Pleas. For the following reasons, we affirm that judgment.
 {¶ 2} On May 5, 2004, a Franklin County Grand Jury indicted appellant and co-defendant, her now ex-husband, John Crosky, on a number of charges arising from allegations that John Crosky sexually abused appellant's daughter, J.S., between 1997 and 2001. Appellant was indicted on three charges: rape in violation of R.C. 2907.02, *Page 2 
and two counts of child endangering in violation of R.C. 2919.22. John Crosky was indicted on 17 charges. Both appellant and John Crosky entered not guilty pleas to the charges.
 {¶ 3} Attorney Douglas Shaw initially represented appellant and John Crosky. Less than two months after the indictment, Shaw filed a motion seeking to withdraw from his representation of appellant. Shaw indicated that he currently represented John Crosky and that appellant was eligible for appointed counsel. The trial court allowed Shaw to withdraw and appointed the Franklin County Public Defender's Office to represent appellant. She later requested new counsel, and after a hearing, the trial court allowed the public defender's office to withdraw and appointed Myron Shwartz as appellant's new counsel.
 {¶ 4} On December 3, 2004, Shwartz filed a motion to have appellant's trial separated from John Crosky's trial. Within days of that filing, appellant sought to dismiss Shwartz and to retain new counsel. The trial court allowed Shwartz to withdraw, and appellant retained Mark Miller to represent her. Miller was in the same law firm with Douglas Shaw, who at the time still represented John Crosky.
 {¶ 5} Because of the potential for a conflict of interest, appellant and John Crosky signed and filed a form entitled "Waiver of Conflict." Appellant acknowledged that Shaw and Miller explained to her that it would be advantageous to have separate counsel due to the potential conflict of interest. She further acknowledged that she had considered the matter and that she knowingly waived any potential conflicts of interest. For the next few months, Miller represented appellant while Shaw represented John Crosky. *Page 3 
 {¶ 6} The trial court held a hearing on April 14, 2005 to discuss the potential conflict of interest arising from Miller's and Shaw's respective representation of appellant and John Crosky. During the hearing, the trial court expressed its concerns about the representation of co-defendants by attorneys in the same law firm. Shaw told the trial court that he and Miller had discussed the potential conflicts and he assured the trial court that they had separate clients and could represent their client's individual interests. Shaw further assured the trial court that the Croskys did not have antagonistic defenses to the charges, although the trial court was concerned that defense counsel may not be able to foresee how those defenses might change during the course of the case. Both appellant and John Crosky again acknowledged the potential conflict of interest but were satisfied with their representation and sought to waive the conflict of interest. The trial court took the matter under advisement.
 {¶ 7} At a subsequent hearing on April 18, 2005, the trial court continued to express its concern that Shaw and Miller could not independently represent their individual client without potentially harming their partner's client. The trial court posed the example of a situation where the State would offer appellant a plea bargain in exchange for her testimony against John Crosky. How, the trial court asked, could Miller independently advise her to accept a deal, the result of which would harm John Crosky, his partner's client? Miller advised the trial court that they had discussed the situation and that they still felt there was no conflict because the Croskys had a common defense to the charges. The trial court again continued the matter to further deliberate.
 {¶ 8} The next day, the trial court questioned Shaw and Miller about the exact status of their representation of the Croskys. The trial court was under the impression *Page 4 
that Miller was representing appellant and that Shaw was representing John Crosky. Based on motions that had been filed jointly by Shaw and Miller on behalf of both appellant and John Crosky, the trial court wondered if the status of their representation had changed. Shaw and Miller informed the court that they would be jointly representing both appellant and John Crosky. Appellant appeared surprised by this statement and requested a few minutes to reconsider her choice of counsel. The trial court informed her that it could not understand how two attorneys from the same firm could effectively represent two clients with potentially adverse interersts. The court allowed appellant additional time to reconsider her waiver of conflict. After a brief recess, appellant asked the trial court to appoint her new counsel. The trial court accepted appellant's request and removed both Shaw and Miller from her representation.
 {¶ 9} The trial court subsequently appointed new counsel to represent appellant. A few months later, appellant requested the trial court to dismiss her new counsel and to allow her to proceed pro se. After extensive questioning, the trial court granted appellant's request and permitted her to represent herself at trial. John Crosky also decided to represent himself at trial. The trial court appointed standby counsel to assist both appellant and John Crosky and continued the trial date for six months to allow them time to prepare for trial.
 {¶ 10} At trial, J.S. testified that she had been sexually abused over a number of years by John Crosky. She testified that she told appellant about the abuse after the first incident of sexual abuse and that appellant did not take any action. J.S. also stated that on one occasion appellant saw John Crosky sexually abusing her and did nothing. J.S. testified that on one occasion John Crosky asked her to take nude pictures of herself. *Page 5 
She asked appellant what John Crosky meant by this request. J.S. stated that appellant told her to take the pictures to the extent she felt comfortable. J.S. testified that she took nude pictures of herself and gave them to appellant for mailing to John Crosky.
 {¶ 11} The Croskys denied all allegations of sexual abuse. As part of his defense, John Crosky called Robin Glove to testify. Glove, a case worker with Franklin County Children Services ("FCCS"), was present for an interview of J.S. that took place at the Child Advocacy Center at Children's Hospital. The interview was conducted in one room, while several other people watched the interview in another room in real-time on closed-circuit television. Among those people witnessing the interview were Glove and a doctor. During the interview, J.S. made statements about the nature of her sexual abuse. She stated that John Crosky sexually abused her, that appellant knew about the abuse and thought it would be a teaching tool, and that appellant walked in on one incident of sexual abuse and asked if she was O.K., and then left. Over objection, the trial court allowed Glove to affirm that J.S. made those statements during the interview, apparently pursuant to the hearsay exception found in Evid.R. 803(4), which allows the introduction of hearsay statements "made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations."
 {¶ 12} The jury found appellant not guilty of rape but found her guilty of two counts of child endangering.[1] The trial court sentenced her to a four-year prison term for the felony count of child endangering and a six-month prison term for the misdemeanor count of child endangering. The trial court ordered the prison terms to be served concurrently *Page 6 
for a total prison term of four years. The trial court also classified appellant as a sexually oriented offender.
 {¶ 13} Appellant appeals and assigns the following errors[2]:
 Assignment of Error No. I: The trial court erred in failing to ensure that appellant's decision to seek new counsel was made knowingly and intelligently, so as to preserve her right to the retained counsel of her choice, as guaranteed by the Sixth Amendment of the United States Constitution.
 Assignment of Error No. II: The trial court's admission of statements by the caseworker regarding what the alleged victim told the interviewer at the Child Advocacy Center violated appellant's rights under the Confrontation Clause of the Sixth Amendment of the United States Constitution, and/or did not qualify as statements for purposes of medical diagnosis pursuant to Evidence Rule 803(4).
 Assignment of Error No. III: The trial court erred in allowing prosecutorial misconduct, which denied appellant the right to a fair trial and due process under the Sixth and Fourteenth Amendments of the United States Constitution, when the state exceeded the scope of its ruling not to delve into the particulars of the Child Advocacy Center interview during cross-examination.
 Assignment of Error No. IV: The trial court erred in overruling appellant's motion for acquittal at the close of the state's casein-chief and renewed at the close of all the evidence, because the evidence was insufficient to support the convictions, in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution.
 Assignment of Error No. V: The convictions are against the manifest weight of the evidence.
 {¶ 14} In her first assignment of error, appellant contends that the trial court went too far in questioning her about her waiver of the conflict of interest and failed to *Page 7 
determine whether her decision to seek new counsel was done knowingly and intelligently. We disagree.
 {¶ 15} The Sixth Amendment to the United States Constitution guarantees that a criminal defendant shall have the assistance of counsel for her defense. Wheat v. U.S. (1988), 486 U.S. 153, 159,108 S.Ct. 1692. The "aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Id. There is a presumptive right to employ one's own counsel. State v.Keenan (1998), 81 Ohio St.3d 133, 137. That presumption may be overcome by a showing of an actual or serious potential for conflict. Id., citingWheat.
 {¶ 16} During the course of the case, the trial court became aware of the potential conflict of interest arising from Shaw's and Miller's respective representation of John Crosky and appellant. SeeWheat at 159-160 (recognizing the "special dangers" that multiple representation of criminal defendants engenders); Thomas v. Foltz
(C.A.6, 1987), 818 F.2d 476, 481 (multiple representation may prevent attorney from exploring possible plea agreements and agreements to testify on behalf of the prosecution).
 {¶ 17} When a trial court becomes aware of a potential conflict of interest, the court has a duty to inquire about the potential conflict.State v. Gillard (1992), 64 Ohio St.3d 304, 311. If the conflict of interest exists, the trial court must alert the defendant to the possible consequences of the conflict and obtain a voluntary and intelligent waiver of such a conflict. State v. Garcia, Huron App. No. H-06-003, 2007-Ohio-1525, at ¶ 16. However, a trial court may, in its discretion, refuse to accept a waiver of conflict. See Wheat, at 163 ("[W]e think the district court must be allowed substantial latitude in *Page 8 
refusing waivers of conflicts of interest * * *."); U.S. v. Hall (C.A.6, 2000), 200 F.3d 962, 965 (waiver of conflict of interest not binding on courts); State v. Sims (May 24, 1995), Summit App. No. 16936.
 {¶ 18} Here, the trial court properly questioned appellant about the potential conflict of interest inherent in Shaw's and Miller's representation of appellant and John Crosky. Gillard. The trial court explained to appellant that conflicts can arise when attorneys in the same law firm represent co-defendants. Appellant maintained that she was comfortable with her counsel and she sought to waive the potential conflict of interest. The trial court did not abuse its discretion when it took the matter under advisement rather than immediately accepting the waiver of conflict. A trial court has wide latitude in dealing with such waivers. Wheat.
 {¶ 19} Less than a week later, the parties were again before the trial court when Shaw informed the trial court that he and Miller had decided to jointly represent appellant and John Crosky, instead of separately representing each of them. The trial court again alerted appellant to the possible consequences of such an arrangement, and appellant requested a recess to consider the change. After the recess, appellant changed her mind and decided to seek new counsel.
 {¶ 20} The trial court questioned appellant on several occasions about her waiver of the potential conflict of interest and the concerns and problems that are inherent in the joint representation of co-defendants. This is not a case, however, where the trial court declined to accept a defendant's waiver of a conflict of interest. Appellant voluntarily choose to dismiss her current attorneys and have new counsel appointed. We also note that on three previous occasions, appellant was granted new counsel pursuant to her *Page 9 
request. Given appellant's history of representation and the trial court's prior discussion with appellant regarding the dangers associated with the joint representation of co-defendants, the trial court did not abuse its discretion by failing to question appellant further to determine whether her decision to obtain new counsel was voluntary and intelligent. A criminal defendant may decide how her case will proceed.State v. Williams, 99 Ohio St.3d 439, 2003-Ohio-4164, at ¶ 56. Given the trial court's past inquiry, the trial court did not err by allowing appellant to change her mind and proceed with new counsel. Id. at ¶ 57.
 {¶ 21} Appellant also takes issue with the trial court's consideration of whether to refer Shaw and Miller to the Disciplinary Counsel of Ohio. Appellant claims that this "threat" impacted her decision to change attorneys. Although there is no such "threat" in the record, the trial court repeatedly expressed its concerns about the joint representation and noted Ethical Consideration 5-15, which deals with situations involving representation of multiple clients having potentially different interests. The Ethical Consideration instructs a lawyer that doubts should be resolved against such representation. See, also, DR 5-105. A lawyer possessing knowledge of a violation of the disciplinary rules is required to report such knowledge to the disciplinary counsel. DR 1-103(A). Although appellant may have been concerned about the trial court's "threat" to refer Shaw and Miller to disciplinary counsel, the trial court did not err by exploring its obligations under the Code of Professional Responsibility.
 {¶ 22} Because the trial court did not err when it granted appellant's request for new counsel, we overrule appellant's first assignment of error. *Page 10 
 {¶ 23} Appellant contends in her second assignment of error that Glove's hearsay testimony was improperly admitted because the statements J.S. made in her interview were not made for purposes of medical diagnosis or treatment. We note, however, that appellant did not object to this testimony at trial.[3]
 {¶ 24} Appellant's failure to object to this evidence at trial waived all but plain error on appeal. State v. Hartman (2001),93 Ohio St.3d 274. Thus, we review this assignment of error to determine whether the admission of Glove's testimony constituted plain error. "`Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise.'" State v. Nicholas
(1993), 66 Ohio St.3d 431, 436, quoting State v. Moreland (1990),50 Ohio St.3d 58, 62.
 {¶ 25} Glove testified that J.S. stated in her interview that appellant knew about the sexual abuse and thought it would be a learning tool, and that on one occasion appellant saw John Crosky sexually abusing her and did nothing. J.S. testified to essentially the same facts. J.S. also testified that she told appellant about an incident when John Crosky touched her vagina. Thus, the majority of Glove's testimony was cumulative of testimony already properly admitted.State v. Lewis (Apr. 28, 1994), Franklin App. No. 93AP-911 (no plain error admitting hearsay testimony that was limited and mostly cumulative of other admissible testimony); State v. Vasquez (Nov. 1, 2001), Cuyahoga App. No. 79319 (no plain error improperly admitting hearsay testimony of child victim's statements made to social worker where testimony cumulative to child's own testimony). Therefore, even if *Page 11 
Glove's testimony was improperly admitted, we fail to find that but for the error, the outcome of the trial would clearly have been different.
 {¶ 26} The only portion of Glove's hearsay testimony that was not cumulative of J.S.'s testimony was Glove's testimony that J.S. stated appellant thought the abuse would be a learning tool. This testimony was relatively minor given the other testimony describing the sexual abuse. We cannot say that but for the admission of this testimony, the outcome of the trial would clearly have been different. Appellant has failed to establish plain error in the admission of Glove's hearsay testimony. Therefore, we overrule appellant's second assignment of error.
 {¶ 27} Appellant contends in her third assignment of error that prosecutorial misconduct deprived her of a fair trial. Specifically, she contends that the prosecutor exceeded the scope of the trial court's instructions when the prosecutor asked Glove about the specific allegations J.S. made during her interview at Children's Hospital. We disagree.
 {¶ 28} The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights. State v. Smith (1984), 14 Ohio St.3d 13,14-15; State v. Thompson, 161 Ohio App.3d 334, 2005-Ohio-2508, at ¶ 30. Generally, prosecutorial misconduct is not a basis for overturning a criminal conviction, unless, on the record as a whole, the misconduct can be said to have deprived the defendant of a fair trial. State v.Lott (1990), 51 Ohio St.3d 160, 166. The focus of that inquiry is on the fairness of the trial, not the culpability of the prosecutor. State v.Bey (1999), 85 Ohio St.3d 487, 495. *Page 12 
 {¶ 29} During a sidebar concerning John Crosky's objection to Glove's testimony, the trial court instructed the prosecutor to question Glove generally about statements J.S. made in her interview regarding allegations of sexual abuse. The trial court cautioned, however, that it would not allow "verse and chapter rehearsal" of all the statements J.S. made during the interview. The prosecutor began to question Glove about the allegations J.S. made during the interview. Appellant did not object to these questions. Failure to object to the alleged prosecutorial misconduct waived all but plain error. State v. LaMar,95 Ohio St.3d 181, 2002-Ohio-2128, at ¶ 126; State v. Loch, Franklin App. No. 02AP-1065, 2003-Ohio-4701, at ¶ 43.
 {¶ 30} After a more specific question concerning the first specific incident of sexual abuse, John Crosky again objected. The trial court sustained the objection, telling the prosecutor that she was not being general enough. The prosecutor ceased the line of questioning.
 {¶ 31} Appellant contends that the prosecutor's questioning was improper. We disagree. The trial court's admonition to the prosecutor that she not ask about "verse and chapter" of statements J.S. made in her interview was not a clear ruling on what questions would or would not be allowed. The prosecutor's questions were asked in an attempt to comply with the trial court's rulings. Initially, the prosecutor's questioning was general and did not cause either appellant or John Crosky to object. When the prosecutor apparently stepped over the line by asking a more specific question, John Crosky objected. The trial court sustained the objection and instructed the prosecutor that she was not being general enough. The prosecutor then stopped that line of questioning. We find nothing improper about the prosecutor's line of questioning which *Page 13 
attempted to comply with the trial court's initial advisory ruling. SeeState v. Free (Feb. 13, 1998), Montgomery App. No. 15901 (finding no prosecutorial misconduct in questioning witness where prosecutor attempting to elicit testimony while also trying to comply with court's ruling on objections); State v. Martin (Aug. 24, 1994), Hamilton App. No. C-930253 (no improper conduct where prosecutor asked questions, defendant objected, and trial court sustained objections).
 {¶ 32} The prosecutor's line of questioning was not improper and, therefore, did not rise to the level of plain error or prosecutorial misconduct. Appellant's third assignment of error is overruled.
 {¶ 33} Appellant contends in her fourth and fifth assignments of error that her child endangering convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. State v. Thompkins
(1997), 78 Ohio St.3d 380, paragraph two of the syllabus. Therefore, we will separately discuss the appropriate standard of review for each.
 {¶ 34} In State v. Jenks (1991), 61 Ohio St.3d 259, the Supreme Court of Ohio delineated the role of an appellate court presented with a challenge to the sufficiency of the evidence:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Page 14 
Id., at paragraph two of the syllabus.
 {¶ 35} Whether the evidence is legally sufficient is a question of law, not fact. Thompkins, at 386. Indeed, in determining the sufficiency of the evidence, an appellate court must "give full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia (1979),443 U.S. 307, 319, 99 S.Ct. 2781. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. State v. Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 79; State v. Thomas (1982), 70 Ohio St.2d 79, 80. A jury verdict will not be disturbed unless, after viewing the evidence in the light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. State v.Treesh (2001), 90 Ohio St.3d 460, 484; Jenks, at 273.
 {¶ 36} Appellant was convicted of two counts of child endangering. The first count, a felony of the second degree, required the state to prove beyond a reasonable doubt that appellant enticed, coerced, permitted, encouraged, compelled, hired, employed, used, or allowed J.S. to act, model, or in any other way participate in, or be photographed for, the production, presentation, dissemination, or advertisement of any material or performance that appellant knows or reasonably should know is obscene, is sexually oriented matter, or is nudity-oriented matter. R.C. 2919.22(A)(5).
 {¶ 37} "Nudity-oriented matter" is defined as any material or performance that shows a minor in a state of nudity and that, taken as a whole by the average person applying contemporary community standards, appeals to prurient interest. R.C. 2919.22(D)(4)(b). *Page 15 
 {¶ 38} Appellant contends that the State failed to present any evidence indicating that she participated in or encouraged J.S. to take nude pictures of herself. We disagree. J.S. testified that John Crosky called her while he was in another state and asked her to take pictures of herself. J.S. used appellant's camera to take the pictures, after asking appellant if she could use the camera. J.S. testified that she sent John Crosky some pictures of herself, but he later asked her to show more nudity in the pictures. When she asked appellant what John Crosky meant by showing more nudity, appellant told her to take pictures to the extent she felt comfortable. J.S. complied with John Crosky's request and took naked pictures of her breasts and her vagina in front of a mirror. She gave the pictures to appellant for mailing to John Crosky. J.S. testified that John Crosky later called to thank her for the pictures.
 {¶ 39} Viewing this testimony in a light most favorable to the state, it is sufficient for a reasonable trier of fact to find that appellant permitted, encouraged, or allowed J.S. to participate in, or be photographed for, the production, presentation, or dissemination of material that she knew or reasonably should have known is obscene, is sexually oriented matter, or is nudity-oriented matter. Appellant encouraged her daughter to take pictures of herself for John Crosky. When J.S. asked appellant what John Crosky meant when he asked her for more nudity in the pictures, she told J.S. to take pictures to the extent she felt comfortable. Appellant allowed J.S. to use appellant's camera to take these pictures. J.S. took sexually oriented pictures of herself and gave them to appellant for mailing to John Crosky. Appellant's conviction for the first count of child endangering is supported by sufficient evidence. *Page 16 
 {¶ 40} The second count of child endangering, a misdemeanor of the first degree, required the state to prove that appellant recklessly created a substantial risk to the health or safety of J.S. by violating a duty of care, protection, or support. R.C. 2919.22(A). Parents have a legal duty to act to protect their children from harm and abuse.State v. Sammons (1979), 58 Ohio St.2d 460, 463; State v. Elliott
(1995), 104 Ohio App.3d 812, 817.
 {¶ 41} J.S. testified that she told appellant, her mother, that John Crosky molested her after the first incident of sexual abuse. Appellant asked J.S. if she wanted it to stop, but appellant took no action to protect J.S., and continued to allow J.S. to sleep in the same bed with appellant and John Crosky. Additionally, J.S. testified that on one occasion appellant walked into a bedroom and saw John Crosky sexually abusing her. Appellant asked J.S. if she was O.K., and then walked out of the room. She took no action after witnessing this incident.
 {¶ 42} This testimony, when viewed in a light most favorable to the state, is sufficient for a reasonable trier of fact to find that appellant violated her duty to protect J.S. from abuse and recklessly created a substantial risk of harm to J.S. Appellant knew about John Crosky's abuse of J.S. and appellant took no action to prevent it. A parent has a duty to protect her child from physical abuse, and appellant violated that duty by taking no action to prevent the abuse despite knowledge of the abuse. State v. Hlavsa (June 15, 2000), Cuyahoga App. No. 76220 (failure to protect a child from physical abuse can be child endangering); State v. Legg (1993), 89 Ohio App.3d 184, 187
(child endangering conviction supported by sufficient evidence when parent with knowledge that *Page 17 
son being beaten did nothing). Appellant's second conviction of child endangering is supported by sufficient evidence.
 {¶ 43} Appellant's manifest weight of the evidence claim requires a different review. The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. State v. Brindley, Franklin App. No. 01AP-926, 2002-Ohio-2425, at ¶ 16. When presented with a challenge to the manifest weight of the evidence, an appellate court, after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."'Thompkins, supra, at 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most "`exceptional case in which the evidence weighs heavily against the conviction."' Id.
 {¶ 44} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial.State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. The trier of fact is free to believe or disbelieve all or any of the testimony. State v. Jackson (Mar. 19, 2002), Franklin App. No. 01AP-973;State v. Sheppard (Oct. 12, 2001), Hamilton App. No. C-000553. The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. State v. Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 58; State v. Clarke (Sept. 25, 2001), Franklin App. No. 01AP-194. Consequently, although an appellate court must act as a *Page 18 
"thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must also give great deference to the fact finder's determination of the witnesses' credibility. State v.Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 28;State v. Hairston, Franklin App. No. 01AP-1393, 2002-Ohio-4491, at ¶ 74.
 {¶ 45} Appellant argues that her convictions were against the manifest weight of the evidence because there was significant testimony from friends and family that J.S. was a happy and well-cared for girl who exhibited no outward signs of sexual abuse. Appellant also points to the testimony of K.W., who at one time was J.S.'s best friend. She testified that J.S. repeatedly denied ever being abused by John Crosky.
 {¶ 46} The jury heard all of this evidence and believed the evidence presented by the prosecution over the evidence presented by appellant. This is the role of the jury, to determine the credibility of witnesses and to believe or disbelieve their testimony. The jury obviously believed J.S., and we cannot say that the jury clearly lost its way when it decided to believe J.S.'s testimony. This is not the exceptional case where the evidence weighs heavily against appellant's convictions.
 {¶ 47} Appellant's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. Accordingly, her fourth and fifth assignments of error are overruled.
 {¶ 48} Having overruled appellant's five assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
SADLER, P.J., and FRENCH, J., concur.
[1] The jury found John Crosky guilty of 15 of the 17 charges against him. See State v. Crosky, Franklin App. No. 06AP-655, 2007-Ohio-___.
[2] Appellant filed a pro se document entitled "Judicial Notice" in which she raises a number of issues she alleges were not raised in her appellate brief. This document was filed well after the deadline for the filing of appellate briefs in this matter and does not separately set forth arguments in support of her issues. App.R.12. Thus, we will not address those issues in this appeal.
[3] John Crosky's objection to this testimony did not preserve the objection for appellant. Appellant's failure to object, nothwithstanding her co-defendant's objection, waives all but plain error. See State v.Kunik (Feb. 6, 1981), Auglaize App. No. 2-80-24.