[Cite as *State v. Whitby*, 2012-Ohio-264.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96626**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**REBECCA A. WHITBY**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-526567

**BEFORE:** S. Gallagher, J., Celebrezze, P.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** January 26, 2012

**ATTORNEYS FOR APPELLANT**

Jennifer Scott
P.O. Box 770403
Lakewood, OH   44107

William L. Summers
William L. Summers & Associates Co., LPA
Landerbrook Corporate Center II
5910 Landerbrook Drive, Suite 200
Cleveland, OH   44124


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

By:   Sherrie S. Royster
        T. Allan Regas
Assistant Prosecuting Attorneys
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH   44113


SEAN C. GALLAGHER, J.:

{¶ 1}   Appellant, Rebecca Whitby, appeals her conviction in the Cuyahoga County Court of Common Pleas for one count of assault on a peace officer and two counts of resisting arrest.   For the reasons stated herein, we affirm.

{¶ 2}   The charges in this case stem from an incident occurring on April 25, 2009.  On that date, appellant's father called 911 and, with a sense of urgency, reported that

appellant was drunk and that he needed a mediator. Cleveland police officers Mitchell Sheehan and James Bryant responded to the radio dispatch for an "intoxicated disturbance" at 886 Alhambra in Cleveland. Upon their arrival, the officers were let inside by appellant's father.

{¶ 3} According to Officer Sheehan's version of events, appellant was being held back by her mother. Appellant had a little foam in the corner of her mouth, her eyes were "real wide," and she was swearing and screaming. Officer Sheehan testified that appellant cursed at and tried to charge her father. When the officer tried to stop appellant, she tried to punch the officer, cursed at him, and spat in his eyes and nose. Officer Sheehan attempted to take appellant to the ground to get her under control and handcuff her. The two fell to the floor. Officer Sheehan stated appellant was trying to hit him, she was biting his elbow and chest, she was spitting at him, and she began grabbing at his gun. He called out to his partner, who punched appellant in the head and face. According to Officer Sheehan, appellant then lunged at Officer Bryant's weapon, causing Officer Bryant to punch the appellant again. She was then placed in handcuffs.

{¶ 4} While the officers took appellant down the stairs, she was spitting and kicking at them, and she was trying to bite them. Officer Sheehan stated appellant's mother came from behind and pushed them, causing them to fall down the steps. The officers continued to struggle with appellant while taking her outside and placing her in the police car. Numerous other officers arrived on scene. Officer Bryant's testimony was largely consistent with the testimony of Officer Sheehan.

{¶ 5} Appellant's father, Timothy Walker, testified that although his daughter had been drinking, he was mistaken in his choice of words that she was drunk. He stated that when the officers arrived, he informed them they were no longer needed and everything was fine. His grandson was also in the home at the time. Appellant's father claimed the officers proceeded upstairs, knocked on a closed door to the bathroom where his wife and daughter were, and demanded appellant come out so they could arrest her. He stated the officers arm-barred appellant in the face, tackled her to the ground, and punched her in the ribs and face. He denied that appellant ever tried to grab for the officers' guns. Walker testified the officers continued to assault appellant as they handcuffed her and dragged her down the stairs and through the front door. He stated other officers had arrived on scene, and they surrounded appellant on the front porch. He claimed the officers kicked and stomped on appellant, threw her into the police car "like she was a sack of potatoes," and tased her.

{¶ 6} Officer Michael Dunst responded to the scene to investigate the use of nondeadly force. He concluded that the officers used nondeadly force to effect the arrest, acted appropriately and did not use excessive force, and complied with applicable rules, regulations, and procedures.

{¶ 7} Dawn Garrison, who was an inmate on the date of the incident, testified that another inmate threw toilet water on her and was acting like she was insane, and a fight broke out. Michelle Walker, a corrections officer, responded to the fight and observed that the inmate was wet. Walker stated that appellant was "more or less out of it, real

excited, jumpy, real irate[.]" Walker testified appellant was swinging and kicking while being removed from the cell. Walker claimed she sustained personal injuries and went to the hospital for treatment.

{¶ 8} Appellant testified that she had been drinking that night but was not drunk. She was in the bathroom having a discussion with her mother when the police arrived. The women informed the officers everything was okay. Appellant stated the officers told her to come out of the bathroom and stated they were going to arrest her. She claims the officers grabbed her arm, tackled her to the ground, punched and hit her in the face, head and ribs, and choked her neck. She denied spitting at the officers. She claims the officers handcuffed her, carried her down the stairs and dropped her, and slammed her down on the front porch where she was stomped on and kicked. She stated she was thrown into the police car, but did not recall being tased. She denied throwing toilet water on the other inmate, and claimed water may have accidently spilled on her. She claimed that when she was released from jail, she was told she was not being charged with anything. She denied having been hit by the other inmate and claimed her injuries were sustained from the officers in her home. It was not until she filed a complaint against the officers that she found out she was being charged.

{¶ 9} Appellant's mother, also named Rebecca Whitby, testified to her account of the police assault on her daughter. She denied grabbing or pulling at the officers. A few neighbors who claimed to have witnessed the portion of events transpiring outside the home also testified for the defense.

{¶ 10} Detective Albert Sardon investigated the allegations of assault on the police officer. He found the officers' reports were incomplete. After speaking with the officers, it was his impression that appellant was wild and out of control. He testified to proper handgun retention techniques. He indicated that Officer Bryant had stated he was not aware of appellant's attempts to grab his service weapon. He conceded that the word "grabbed" appeared in the field report in reference to Officer Sheehan's service weapon. He also determined, based on his investigation, to present the case to a prosecutor.

{¶ 11} Photographs were taken of appellant following the altercation with the inmate. The photographs depicted bruising to her left shoulder, redness on her right shoulder, a cut to her lower left face near her neck line, and a cut to her forehead. Police photographs of Officer Sheehan showed saliva on his uniform, as well as scratches and bite marks on certain parts of his body. DNA evidence could not exclude the saliva on Officer Sheehan's uniform from belonging to appellant. No visible prints were found on the officers' guns. The state also introduced evidence demonstrating that the police officers were not issued tasers until January 2010, which was after the incident herein.

{¶ 12} As a result of the incidents occurring at appellant's home and at the jail, appellant was charged in two separate cases. In *State v. Whitby,* Cuyahoga C.P. No. CR-526567 (Mar. 8, 2011), she was indicted for one count of felonious assault on a peace officer (R.C. 2903.11(A)(1)), two counts of assault on a peace officer (R.C. 2903.13(C)(3)), two counts of aggravated robbery (R.C. 2911.01(B)(1)), two counts of resisting arrest (R.C. 2921.33(B)), and one count of endangering children (R.C.

2919.22(A)). Appellant's mother was indicted as a codefendant for obstruction of justice. The first charge of felonious assault later was nolled, and the remaining count numbers were adjusted. In *State v. Whitby*, Cuyahoga C.P. No. CR-532867 (Feb. 7, 2011), appellant was indicted for felonious assault on a peace officer (R.C. 2901.11(A)(1)) and assault against a corrections officer (R.C. 2903.13(A)).

{¶ 13} The trial court denied a motion to sever the cases. The court also refused to grant an oral motion made by the codefendant's counsel for the transcription of the grand jury testimony of the two officers testifying in the case. Ultimately, the cases proceeded to a jury trial. The trial court denied appellant's Crim.R. 29 motion, which was made at the close of the state's case and at the close of the defense's case in chief.

{¶ 14} In Cuyahoga C.P. No. CR-526567, appellant was found guilty of one count of assault on a peace officer and two counts of resisting arrest. She was found not guilty of the remaining counts. In Cuyahoga C.P. No. CR-532867, appellant was found not guilty on all counts. The trial court sentenced appellant to a prison term of six months for the assault on a peace officer count, and to time served for the resisting arrest counts. The court ordered her to pay her court costs and $40 in restitution to Officer Sheehan. The court also advised appellant of postrelease control.

{¶ 15} Appellant filed this appeal, raising five assignments of error for our review. Her first assignment of error provides as follows: "I. The appellant and certain jurors were denied equal protection of the laws by the state's systematic exclusion of prospective jurors solely because of their race and gender."

{¶ 16} Appellant argues that the state engaged in race and/or gender discrimination when exercising three of its peremptory challenges and offered no more than perfunctory responses to appellant's *Batson* claim.

{¶ 17} In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court recognized that the Equal Protection Clause of the United States Constitution prohibits the use of peremptory challenges in a discriminatory manner to exclude potential jurors solely on account of their race. *Id.* at 89; *see also State v. Hernandez*, 63 Ohio St.3d 577, 581, 589 N.E.2d 1310 (1992).

> A court adjudicates a *Batson* claim in three steps. First, the opponent of the peremptory challenge must make a prima facie case of racial discrimination. Second, if the trial court finds this requirement fulfilled, the proponent of the challenge must provide a racially neutral explanation for the challenge. Third, the trial court must decide, based on all the circumstances, whether the opponent has proved purposeful racial discrimination. A trial court's finding of no discriminatory intent will not be reversed on appeal unless clearly erroneous.
>
> In step three, the trial court may not simply accept a proffered race-neutral reason at face value, but must examine the prosecutor's challenges in context to ensure that the reason is not merely pretextual. (Citations and quotations omitted.) *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶ 64-65.

{¶ 18} Here, three of the five jurors excused by the state through its peremptory challenges were African-American. After defense counsel raised a *Batson* challenge, the state offered the following reasons for excluding the prospective jurors. Juror No. 3 was excused because of "some of the responses about how he feels about police officers." During voir dire, the juror indicated that he had negative experiences with police officers as the victim of a robbery. Juror No. 12 was excused because "he seemed to have a lack

of interest when being questioned." Juror No. 13 was excused for being vague in her description of her husband's employment with the Sheriff's Department and being evasive regarding her own employment history. After considering the arguments of counsel, the trial court accepted the state's race-neutral reasons. In the end, the jury was comprised of nine women and three men, and two of the jurors were African-American.

{¶ 19} The state cites other cases in which similar reasons for excusing jurors have been found legitimate and non-discriminatory. *See State v. Ford*, 8th Dist. No. 90834, 2008-Ohio-5471, 2008 WL 4681786 (negative experiences with police); *State v. Williams*, 8th Dist. No. 96244, 2011-Ohio-4126, 2011 WL 3654012 (uninterested in proceeding); *State v. Tichavakunda*, 8th Dist. No. 78775, 2001 WL 1001103 (Aug. 23, 2001) (evasive responses). Upon our review, we do not find the trial court's decision was clearly erroneous. Appellant's first assignment of error is overruled.

{¶ 20} Appellant's second assignment of error provides as follows: "II. The appellant was denied her constitutional right of due process based upon the failure of the court to sever the two cases for purposes of trial."

{¶ 21} Under Crim.R. 13, a court may order two or more cases be tried together "if the offenses * * * could have been joined in a single indictment * * *." Pursuant to Crim.R. 8(A), two or more offenses may be joined if the offenses "are of the same or similar character * * * or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." While the law favors the joinder of offenses that are of the "same or

similar character," a defendant may move to sever the charges under Crim.R. 14 upon a showing of prejudice. *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990).

> The defendant, however, bears the burden of proving prejudice and of proving that the trial court abused its discretion in denying severance.
>
> The state may rebut a defendant's claim of prejudicial joinder in two ways. First, if in separate trials the state could introduce evidence of the joined offenses as "other acts" under Evid.R. 404(B), a defendant cannot claim prejudice from the joinder. Second, the state can refute prejudice by showing that "evidence of each crime joined at trial is simple and direct." (Internal citations omitted.) *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 95-96.

{¶ 22} Because appellant did not renew her objection to joinder at the close of evidence, she has waived all but plain error. *See State v. Miller*, 105 Ohio App.3d 679, 691, 664 N.E.2d 1309 (4th Dist.1995); *State v. Ferren*, 8th Dist. No. 95094, 2011-Ohio-3382, 2011 WL 2651090, ¶ 34. Here, the charges in each case involved appellant's alleged assault against peace officers. The alleged acts were committed on the night of April 25, 2009 and into the early morning hours of April 26, 2009. The first action stemmed from the incident involving the police officers at appellant's home, while the second action stemmed from the incident with the corrections officer at the jail following the earlier arrest. Only a few hours separated these incidents. The trial court specifically instructed the jury that "the charges in the indictments constitute separate and distinct matters" and to consider each count separately. The evidence in each matter was simple and direct such that the jury was readily able to segregate the proof on each charge, as demonstrated by their acquittal on all charges in Cuyahoga C.P. No. CR-532867.

**{¶ 23}** Upon our review, we find the trial court properly joined the action and the claim of prejudicial joinder was refuted. Accordingly, appellant has not demonstrated error, let alone plain error, in the trial court's failure to sever the two cases for purposes of trial. Appellant's second assignment of error is overruled.

**{¶ 24}** Appellant's third assignment of error provides as follows: "III. The evidence was insufficient to sustain a finding of guilty because the state failed to present evidence to establish beyond a reasonable doubt the elements necessary to support the conviction."

**{¶ 25}** When an appellate court reviews a claim of insufficient evidence, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991). The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. A motion for acquittal under Crim.R. 29(A) is governed by the same standard used for determining whether a verdict is supported by sufficient evidence. *Id.*

**{¶ 26}** Appellant was convicted of one count of assault on a peace officer in violation of R.C. 2903.13(C)(3), which provides: "No person shall knowingly cause or

attempt to cause physical harm to another * * *. If the victim is a peace officer * * * assault is a felony of the fourth degree."

{¶ 27} Appellant was also convicted of two counts of resisting arrest in violation of R.C. 2921.33(B), which provides: "No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person * * * and, during the course of or as a result of the resistance or interference, cause physical harm to a law enforcement officer."

{¶ 28} Our review of the record reflects that Officers Sheehan and Bryant testified that they responded to appellant's home after the police received a 911 call from appellant's father reporting that his daughter "came in drunk and she is kind of out of control." When the police arrived, they observed the appellant screaming, swearing, and foaming from her mouth. When Officer Sheehan attempted to stop appellant from charging her father, she cursed and spit at Officer Sheehan and attempted to punch him. She continued to assault the officer as he tried to handcuff her. After being placed in handcuffs, she was spitting, kicking, and biting at the officers.

{¶ 29} While there were some inconsistencies in the testimony of the officers, a review of the entire record shows that their testimony was neither inherently unreliable nor unbelievable. Photographs were introduced depicting saliva on Officer Sheehan's uniform, a scratch on his neck, and bite marks on his arm. DNA testing could not exclude appellant as the source of saliva.

{¶ 30} The defense witnesses offered a different account of events, suggesting police brutality. However, appellant's booking photo, which was taken after her fight

with another inmate, depicted only minor injuries.   Also, there were some inconsistencies in the testimony of the witnesses, and there was evidence rebutting the claimed use of tasers by the police officers.   The jury was able to consider the credibility of the witnesses and weigh the evidence presented.

{¶ 31} Sufficient evidence was presented to establish that appellant knowingly committed assault against a peace officer and forcefully resisted a lawful arrest.   We find, when viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offenses proven beyond a reasonable doubt.   Appellant's third assignment of error is overruled.

{¶ 32} Appellant's fourth assignment of error provides as follows:   "IV. Appellant's convictions were against the manifest weight of the evidence."

{¶ 33} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether

> there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt.   In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.   (Internal citations and quotations omitted.) *Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, at ¶ 81.

{¶ 34} Appellant's argument is based on the credibility of the officers and the inconsistencies in their testimony.   Though there were some discrepancies, the testimony of the officers was fairly consistent.   The officers detailed appellant's assault on Officer Sheehan and her subsequent resistance to arrest.   The jury chose to believe the officers'

account of events. After carefully reviewing the record, weighing the evidence, and considering witness credibility, we cannot say the jury clearly lost its way and created a manifest miscarriage of justice in convicting appellant of the assault on a peace officer and resisting arrest charges. Appellant's fourth assignment of error is overruled.

{¶ 35} Appellant's fifth assignment of error provides as follows: "Appellant was denied her constitutional right of due process and to confront her accusers when the trial court failed to allow defense counsel an in camera inspection of the grand jury testimony."

{¶ 36} The oral motion for the grand jury transcripts was made by the codefendant's counsel. Because appellant never requested the transcripts or objected to the denial of the same, she has waived all but plain error. *See State v. Jennings*, 10th Dist. Nos. 09AP-70 and 09AP-75, 2009-Ohio-6840, 2009 WL 5062117, ¶ 27; *State v. Crosky*, 10th Dist. No. 06AP-816, 2007-Ohio-6533, 2007 WL 4285153, ¶ 23, fn. 3 ("Appellant's failure to object, notwithstanding her co-defendant's objection, waives all but plain error").

{¶ 37} The Ohio Supreme Court has recognized a limited exception to the general rule of grand jury secrecy:

> [A]n accused is not entitled to review the transcript of grand jury proceedings unless the ends of justice require it and there is a showing by the defense that a particularized need for disclosure exists which outweighs the need for secrecy. A particularized need is established when the circumstances reveal a probability that the failure to provide the grand jury testimony will deny the defendant a fair trial. Determining whether a particularized need exists is a matter within the trial court's discretion.

(Internal citations and quotations omitted.) *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 41.

**{¶ 38}** Further, a speculative claim that the grand jury testimony might contain material evidence or might aid in cross-examination does not establish a particularized need. *Id.* at ¶ 44.

**{¶ 39}** Here, the stated need for the grand jury testimony was counsel's desire to review the testimony for possible impeachment of the officers. Information concerning the testimony was purportedly provided by the grand jury foreman who signed the indictments. The trial court noted that the foreman had arguably violated his grand jury oath, and found the defense still had not demonstrated any particular need. It further deferred any ruling until the filing of a written motion. No such motion was filed.

**{¶ 40}** Our review reflects that the request was based on no more than a speculative belief that the grand jury testimony might contain inconsistencies. Ohio courts have consistently found that a particularized need is not shown by anticipated inconsistencies. *State v. Godfrey*, 181 Ohio App.3d 75, 2009-Ohio-547, 907 N.E.2d 1230 (3d Dist.), ¶ 16; *State v. Luks,* 8th Dist. No. 89869, 2008-Ohio-3974, 2008 WL 3126177, ¶ 48. *Crosky*, 2007-Ohio-6533, 2007 WL 4285153, at ¶ 124.

**{¶ 41}** Finding no error by the trial court, we overrule appellant's fifth assignment of error.

Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, P.J., and
EILEEN A. GALLAGHER, J., CONCUR